[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PENDING PENDENTE LITE MOTIONS
Before the court are several Pendente Lite Motions. The final post trial brief of the parties was filed on May 17, 1999.
I. Plaintiff's Pendente Lite Motion for Contempt (No. 185)
The general substance of this motion is that the plaintiff moves the defendant be held in contempt for his failure to pay certain court ordered shelter expenses and household bills.
First, the plaintiff claims defendant has failed to pay certain bills which have accrued between November, 1998 and March, 1999. See Plaintiff's Exhibit 12. The only contention of the defendant which is sustainable as to this category of bills, concerns the "English Country Gardens", or landscaping expense, bills. The inclusion of $2,120 for January and February (plaintiff did not know the charges for March) is in error. Defendant is responsible for landscaping expenses of up to $1,000 per month. There is no ambiguity in the parties' stipulation. Plaintiff cannot aggregate or carry-over the differential between $1,000 and actual expenses of something less than that in any given month.
Actual landscaping expenses in January were $508.00. Actual expenses in February were $1,108, but are "capped" at $1,000. The CT Page 12557 allowed total for January and February is, therefore, $1,508 not $2,120. The difference is $612.00. The claimed total of $8,671 (Plaintiff's Exhibit 12) less $612 is $8,059.
Second, the plaintiff claims defendant has failed to pay certain obligations which this court ordered paid on February 26, 1999. Plaintiff's Exhibit 14. The defendant has offered no significant or persuasive reason for his failure to pay the balance due of $15,813.
The plaintiff has proven by clear and convincing evidence that there is an arrearage of $23,872 due to or on behalf of plaintiff, and that defendant's failure to pay has been willful. The defendant is adjudged to be in contempt. The defendant is ordered to pay the arrearage directly to plaintiff within two weeks, and the plaintiff shall provide defendant with verification she has paid applicable vendors/providers within four weeks thereafter. The defendant shall also pay any additional sums in excess of $3,389 to reinstate his life insurance policy with The Old Line Life Insurance Company, and perform any other conditions to reinstate same. In addition, the defendant shall deposit $3,000 into a checking account in the joint names of the parties from which the plaintiff alone will be authorized to draw funds to pay expenses of allowed vendors/providers which are more than 30 days past due. Defendant shall make said deposit within two weeks, and shall supplement the deposit upon advise and demand by plaintiff that she has drawn against the escrow to pay allowed expenses. Attorneys fees and costs are addressed further herein.
II. Plaintiff's Pendent Lite Motion to Enjoin and for Sanctionsand Discovery Order (Nos. 186, 186.01)
The general substance of this motion is the plaintiff moves that defendant be enjoined from engaging in certain business conduct claimed to constitute a violation of the automatic orders (P.B. § 25-5), from failing to comply with lawful discovery, and that defendant be sanctioned therefor.
The defendant was a past owner of Effective Security Systems (ESS) until November, 1998, at which time the business was sold. Defendant realized over $4.1 million, gross, from the sale. Defendant remains an owner of a related business, Colin Service Systems (CSS). Prior to the ESS sale, the defendant had been under a June, 1998 court order requesting him to advise plaintiff CT Page 12558 of any sale offers. There were offers between June and November, concerning which plaintiff was not advised.
From the sale proceeds for ESS, $151,000 was transferred to the JBC Legacy Trust f/b/o David Colin. Since the sale in November, defendant has paid taxes on the transaction. He has also used the monies to pay alimony to plaintiff, attorney's fees (his own and a court ordered contribution to plaintiff's), and apparently over $500,000 for his own use and benefit.
The plaintiff has also alleged in paragraphs 8(b) and (c) of her motion, that defendant has made prohibited gifts and assignments to family members. The plaintiff has proven these allegations, as well. See Part III, Infra.
In approximately August, 1998, defendant opened and drew $45,000 against a Citibank line of credit. The funds were transferred to an account in the joint names of defendant and his daughter, who used the funds to pay counsel fees. This is not disallowed by the automatic orders P.B. § 25-5.
More problematic for the court are two business transactions, at least one of which does not appear to be in the "usual course." The first is the defendant incurring a $600,000 liability to purchase stock from a minority shareholder, Robert Diamond. However, the underlying agreement between defendant and Diamond was made 11 years ago, so this liability may pass muster. The second transaction involves the defendant's voluntary reduction of his CSS Deferred Compensation Plan. The defendant's interest in the plan was valued at $428,000 in June, 1998. The defendant has received the monthly reductions, or at least "forgiven" them so that they could be put into CSS retained earnings and make CSS more saleable. The defendant wishes to similarity dispose of $350,000 in the Deferred Compensation Plan, lump sum. Regardless of defendant's true motives here, the transaction clearly appears not to be in the "usual course" and defendant should obtain prior court approval.
Plaintiff's Motion is granted to the following extent:
 1. That the automatic orders set forth in Practice Book § 25-5
specifically apply to all of defendant's personal financial activities and to his interest in Colin Service Systems, Inc., and each and every business entity or account of any kind in which he holds an interest of any kind; CT Page 12559
 2. That the defendant is hereby restrained from obtaining any equity or proceeds from any business entity in which he has any interest, including but not limited to Colin Service Systems, Inc., Colin Cares and any and all subsidiaries of either company, without written agreement of plaintiff's counsel or further order of the court;
 3. That the defendant is hereby restrained from assigning, transferring, encumbering, conveying, or forgiving obligations owed to him, or liquidating any securities or investment accounts, whether held by him individually or jointly or in a fiduciary capacity, including but not limited to his deferred compensation plan and Merrill Lynch CMA account #744-14W98 without written agreement of the plaintiff's counsel or further order of the court;
 4. That counsel select, or the court shall appoint a special master for the purpose of supervising discovery and reporting to the court on discovery issues; the first such report to be no later than 30 days after the date of this order;
 5. That the plaintiff shall have reserved, to the time of trial, a claim that, as part of the future equitable distribution orders in this case, the plaintiff shall be awarded a sum equal to any distribution to defendant of sums from his Merrill Lynch account and/or CSS DCP account which may be in violation of the automatic orders, before assets are divided;
6. Attorneys fees and costs are addressed further herein.
III. Plaintiff's Pendente Lite Motion for Contempt Re: Transferof Assets (No. 187)
The general substance of this motion is that the plaintiff moves the defendant be held in contempt for violating the automatic orders (Practice Book § 25-5) by gifting monies to certain family members, and by assigning a portion of a certain business interest to his son and his accountant in August, 1998.
This action began on or about February 24, 1998, at which time the automatic orders were in force and effect. The defendant had notice of these orders. In February, 1998 and again in December, 1998, the defendant gifted monies to his children and grandchildren. The most substantial gifts were to defendant's grandchildren, for $10,000 to each of the two. It does not CT Page 12560 appear that defendant had any demonstrated "track record" of similar gifts prior to these. Even if there were such a record it is doubtful whether it would have removed these gifts from the prohibited scope of the automatic orders. Further, the gifts were made after a motion had been filed seeking to allow them, but before any such motion was heard or decided by the court.
In August, 1998, the defendant also agreed to assign to his son, David, up to $325,000 from defendant's anticipated proceeds in the future (November) sale of ESS. The assignment appears to be gratuitous by defendant. It states ". . . he [defendant] has generously agreed to share his (sic) some of his proceeds with you." (Plaintiff's Exhibit 2). Also, defendant's testimony that he considered himself "bound" by it in February is disingenuous, and the very existence of the assignment agreement casts doubt on defendant's further testimony that there were no "real offers" for ESS until November. Defendant carried a $300,000 liability to David on his June, 1998 financial affidavit (Plaintiff's Exhibit 6) as a result of the assignment, which amount continues to appear as a liability on defendant's February, 1999, affidavit (Plaintiff's Exhibit 5).
The plaintiff has proven by clear and convincing evidence that the defendant has transferred $26,000 and assigned $300,000 of his property in violation of the automatic orders, and that said conduct has been willful. The defendant is adjudged to be in contempt. An order shall hereby enter that as part of future equitable distribution orders in this case, the plaintiff shall be awarded $26,000 plus any monies paid by defendant to David Colin pursuant to the assignment absent a finding that it is valid and for good consideration. To the extent that no monies have been paid, the defendant is restrained and enjoined from doing so. Attorneys fees and costs are addressed further herein.
IV. Plaintiff's Pendente Lite Motion for Contempt (No. 191)
The general substance of this motion is that the plaintiff moves the defendant be held in contempt for entering into a certain promissory note in July, 1998, and for paying $25,000 to his business ("CSS") in February 1999, both while the automatic orders (Practice Book § 25-5) were in force and effect.
At all times mentioned further herein, CSS owed defendant approximately $65,000, as evidenced by a promissory note dated December 31, 1995 (Plaintiff's Exhibit 10). It remained due CT Page 12561 notwithstanding that, by its own terms and conditions, it was to have been finally paid by May, 1998. In July, 1998, defendant borrowed $25,000 from CSS, due and payable in February, 1999 (Plaintiff's Exhibit 8). In September, 1998, the defendant borrowed $25,000 from CSS, again, due and payable in April, 1999 (Plaintiff's Exhibit 9). Both loans were for the purposes of paying attorney's fees in connection with this action. Both loans were repaid from the monies defendant realized upon the sale of ESS in November, 1998.
Practice Book § 25-5(a)(1) permits a party to incur debt for purposes of ". . . reasonable attorneys fees in connection with the subject action" and for payment of that debt from the party's "property.
Also, a party's ability to do this is largely unaffected by the fact that he may hold a debt obligation from the entity from which he now borrows, as here.
Plaintiff's Motion for Contempt is denied.
V. Defendant's Motion for Order Re: Access to Marital Residenceand/or Access to Escrowed Funds Pendente Lite (No. 194), andPlaintiff's Objection (No. 206)
The general substance of this motion is that defendant requests permission to occupy a part of the marital home; alternatively, he seeks access to a "reasonable amount" of funds now held in escrow, "to acquire an adequate residence."
Plaintiff was granted exclusive use and occupancy of the parties' home in Greenwich following a contested hearing in 1998. The court, having heard the evidence, does not believe that there has been a substantial change or other circumstance which would, in effect, warrant modifying that prior order. Further, there has not been adequate evidence presented to show the defendant is need for access to additional funds, or the amount thereof. Accordingly, defendant's motion is denied; the objection is sustained.
VI. Defendant's Motion for Clarification — Pendente Lite (No.201)
The court cannot determine from reading defendant's motion, to which court order and to which of plaintiff's claims for CT Page 12562 relief he is referring. Defendant's Motion for clarification is denied without prejudice to allow the defendant to amend said motion.
VII. Plaintiff's Pendente lite Motion for Counsel Fees (No. 200)
The court previously awarded plaintiff an allowance for counsel fees against the defendant for services incurred through October 30, 1998. Plaintiff now seeks a further award for services between November 1, 1998 and "the present date."
Plaintiff's counsel has submitted an affidavit for fees and costs of $38,156 for the period between November 1, 1998 and March 31, 1999 (No. 211). Plaintiff's counsel has submitted a second affidavit for fees and costs of $15,785 for the period between March 31, 1999 and April 22, 1999 (Plaintiffs Exhibit 22, 4/22/99). Further, the court has considered counsel's services in the preparation of a Post Trial Memorandum (No. 204), Proposed Orders (No. 205) and Post Trial Reply Memorandum (No. 208). This court has considered the evidence and the statutes made and provided for payment of attorneys fees, including CGS §§ 46b — 62 and 87. The court orders the defendant to pay the plaintiff, as and for a contribution toward her fees and costs, the sum of $45,000 within 30 days.
VIII. Miscellaneous
Counsel for the plaintiff is to advise the Family Caseflow Coordinator whether he/she continues to claim Plaintiff's Motion for Contempt, in writing within 7 days (No. 199).
The court continues to reserve decision over this motion in the event of an affirmative response.
So ordered.
KAVANEWSKY, J